[No. 44572. En Banc. June 23, 1977.]

MAPLE LEAF INVESTORS, INC., *Appellant*, v.
THE DEPARTMENT OF ECOLOGY,
*Respondent.*

*Hillis, Phillips, Cairncross, Clark & Martin, P.S.,* Peter
*L. Buck,* and *Mark S. Clark,* for appellant.

*Slade Gorton,* Attorney General, *Charles B. Roe, Jr.,*
Senior Assistant, and *Robert Jensen* and *Wick Dufford,*
Assistants, for respondent.

DOLLIVER, J.—This matter came before the State Pollu-
tion Control Hearings Board on appeal from the denial by
the Department of Ecology of a permit to operate, maintain
and construct single–family homes within a flood control
zone. The board affirmed the action of the department and
entered its findings and conclusions with respect to issues
raised at that hearing. A notice of appeal was filed with the
Court of Appeals, Division Two, pursuant to RCW 43.21B-
.200, which provides for appeal directly to the Court of
Appeals. That court found it had no jurisdiction, and
remanded the case to the King County Superior Court.
*Maple Leaf Investors, Inc. v. Department of Ecology,* 10
Wn. App. 586, 521 P.2d 742 (1974), *review denied,* 83
Wn.2d 1012 (1974). The Superior Court reviewed the
records of the board; no new evidence was introduced. The
court adopted the board's findings and conclusions and
affirmed its decision. The case has been certified to this
court from the Court of Appeals, Division One.

Appellant is a Washington corporation consisting of 10
shareholders who own a parcel of real property in King
County adjacent to the Cedar River. The property was
purchased in 1965 for $27,500 as an investment for single–
family residential development. It lies entirely within the
boundaries of the Cedar River Flood Control Zone No. 3,
which was established in 1935.

Studies by the Army Corps of Engineers show the Cedar
River has a long history of flooding. In 1966, the Corps of
Engineers established 100–year–cycle floodway and flood-
way–fringe lines along the river. The soil of much, if not all,
of appellant's property is alluvial.

Seventy percent of the appellant's property is within the floodway channel and the remaining 30 percent is within the designated floodway–fringe area. This boundary between floodway and floodway fringe was determined by the respondent in consultation with the United States Army Corps of Engineers and was verified after an on–site inspection by the Corps of Engineers, the hydraulics division of the King County Department of Public Works, and the flood control division of the State Department of Ecology.

The findings indicate that, in twice denying appellant's permit application, respondent acted not only on its own investigation and judgment but relied also on the findings made by the Army Corps of Engineers and the hydraulics division of the King County Department of Public Works.

The Pollution Control Hearings Board concluded and the King County Superior Court adopted the conclusion that RCW 86.16 is police power legislation and the application of that chapter, the regulations thereunder, and the permit denial constituted a reasonable exercise of the police power and, thus, no unconstitutional taking or damaging had occurred.

■ The first issue raised by the appellant is whether the Department of Ecology, in denying the appellant's permit, exercised a rule–making power which exceeds its statutory authority: whether the Department has the statutory authority to prohibit by regulation structures for any human habitation of a permanent nature from being constructed upon the floodway.

In 1935, the legislature enacted RCW 86.16 which provided for the designation of flood control zones by the State. RCW 86.16.010 states:

> The alleviation of recurring flood damages to public and private property, to the public health and safety, and to the development of the natural resources of the state is declared to be a matter of public concern, and as an aid in effecting such alleviation *the state* of Washington, in the exercise of its sovereign and police powers, hereby

*assumes full regulatory control* over the navigable and nonnavigable waters flowing or lying within the borders of the state subject always to the federal control of navigation, *to the extent necessary to accomplish the objects of this chapter.*

(Italics ours.)

The legislature gave "flood damage" a broad definition (RCW 86.16.120), and instructed that the provisions of the chapter "shall be liberally construed with a view to effect their object." RCW 86.16.900. Additionally, RCW 86.16.025 provides, in part:

> [T]he state supervisor of flood control shall have authority *to* examine, *approve or reject designs and plans for any structure. . .* to be erected . . . upon the banks . . . and across the flood plain or floodway of any stream or body of water in this state.

(Italics ours.)

Pursuant to these statutes, the department promulgated WAC 508-60-040 which allows the department to examine all applications for flood control zone permits for construction upon the floodway to insure compliance with the following requirement: "(4) The structures or works are not designed for, or will not be used for either (a) human habitation of a permanent nature . . ." WAC 508-60-040(4).

The purpose of the act is to alleviate flood damage to property, natural resources, and health and safety. In order to meet this purpose, the department determined it to be necessary to disallow structures for human habitation within a floodway and, to that end, promulgated WAC 508-60-040. RCW 86.16.020 provides the state regulatory control shall be exercised over planning and construction of structures "which might, if improperly planned, constructed, operated and maintained, adversely influence the regimen of a stream . . . or might adversely affect the security of life, health and property against damage by flood water." RCW 86.16.025 places no restrictions on the power of the department to reject the plans for structures

in the floodway as such features may affect flood conditions. For these reasons, and following the legislative mandate of RCW 86.16.900, we find WAC 508–60–040 is in accord with the statutory authority of the department. *Hama Hama Co. v. Shorelines Hearings Bd.,* 85 Wn.2d 441, 536 P.2d 157 (1975).

The next issue raised by the appellant is whether the prohibition on construction for human habitation within the floodway is a taking or damaging of private property for public use in violation of Const. art. 1, § 16, and the fifth amendment to the United States Constitution, or whether the prohibition is a valid exercise of the state police power.

In cases such as this, the judicial reasoning involved in a determination of the issue of police power versus condemnation is not reduced to a precise formula, nor is it capable of being so handled. There is no single, simple test to use in dealing with the taking issue. The court, guided by broad general principles, must decide each case on its own facts. *See* Bosselman, Callies & Banta, *The Taking Issue* (U.S. G.P.O. No. 4111–00017, 1973); Van Alstyne, *Taking or Damaging by Police Power: The Search For Inverse Condemnation Criteria,* 44 S. Cal. L. Rev. 1 (1971).

The question essentially is one of social policy which requires the balancing of the public interest in regulating the use of private property against the interests of private landowners not to be encumbered by restrictions on the use of their property. *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 67 L. Ed. 322, 43 S. Ct. 158, 28 A.L.R. 1321 (1922); *Ackerman v. Port of Seattle,* 55 Wn.2d 400, 348 P.2d 664, 77 A.L.R.2d 1344 (1960); *State v. Dexter,* 32 Wn.2d 551, 202 P.2d 906, 13 A.L.R.2d 1081 (1949).

It first should be noted that the Cedar River Flood Control Zone No. 3, within whose confines appellant's property is located, was established in 1935 by written order describing the lands included therein, 30 years prior to the appellant's purchase of the property. It is part of a state-wide program of coordinated planning and management to control the adverse influence of the regimen of the stream

and alleviate flood damages. RCW 86.16.020. *See also Hayes v. Yount,* 87 Wn.2d 280, 552 P.2d 1038 (1976).

Although WAC 508–60–040 was promulgated after the purchase, the appellant bought the property while on notice that it could be subject to some restrictions on use. A conclusion of the Pollution Control Hearings Board, adopted by the Superior Court, states:

> [I]t is difficult to understand appellant's claim of surprise in a determination by three governmental agencies (federal, county and state) that subject property lies in a floodway and is, therefore, unsuitable for development as a single family residential plat:
>> (a)  The Cedar River has a long history of flooding;
>> (b)  The soil of subject property is alluvial; and
>> (c)  Thirty years prior to purchase of subject property by appellant the Flood Control Zone Act was adopted and the Cedar River Flood Control Zone No. 3 was established.

In *Conger v. Pierce County,* 116 Wash. 27, 35–36, 198 P. 377, 18 A.L.R. 393 (1921), the court discussed certain considerations to be taken into account in determining whether government regulations constitute a confiscatory taking. We wrote in part:

> It is easy to understand the principles upon which the police power doctrine is based, but difficult to define in language its limitations. . . . It has been defined as an inherent power in the state which permits it to prevent all things harmful to the comfort, welfare and safety of society. *It is based on necessity.* It is exercised for the benefit of the public health, peace and welfare. Regulating and restricting the use of private property in the interest of the public is its chief business. It is the basis of the idea that the private individual must suffer without other compensation than the benefit to be received by the general public. . . . Eminent domain takes private property for a public use, while the police power regulates its use and enjoyment, or if it takes or damages it, *it is not a taking or damaging for the public use, but to conserve the safety, morals, health and general welfare of the public.*

(Italics ours.) In *Conger,* the court found the police power was not being exercised since the legislative act in question was "bare of any expression which would indicate that the legislature considered that public necessity demanded or required the making of the improvement." *Conger v. Pierce County, supra* at 37. Here, in contrast, a primary reason for the enactment of the flood control zone legislation, passed long before environmental planning was an issue, was the public concern for the protection of the public health and safety. RCW 86.16.010.

The establishment of a flood control zone and the enactment of regulations restricting development within the floodway is not a public improvement in the usual sense of the term. *Cf. Conger v. Pierce County, supra.* The State does not propose to build any facilities or to take any action which would increase the flow of water over appellant's property or flood its land. *See Turner v. County of Del Norte,* 24 Cal. App. 3d 311, 101 Cal. Rptr. 93 (1972). The State acquires no property interest in appellant's land nor is it being set aside for a public use. Comment, *Distinguishing Eminent Domain From Police Power and Tort,* 38 Wash. L. Rev. 607 (1963). Thus, the contention of appellant that the action by the State is the equivalent of the State acquiring a flowage easement over its property, while asserted with great vigor, is without force, and the authority cited in support of this proposition is inapposite to this case.

There is no governmental enterprise, the value of which is enhanced by the State's action. *See, e.g., Anderson v. Port of Seattle,* 49 Wn.2d 528, 304 P.2d 705 (1956). There is no physical invasion of appellant's property. *See, e.g., Keesling v. Seattle,* 52 Wn.2d 247, 324 P.2d 806 (1958). The restrictions imposed on appellant's land use do not discriminate, but treat all similar property owners equally. *Cf. Smith v. Skagit County,* 75 Wn.2d 715, 743, 453 P.2d 832 (1969).

There is a rational relationship between the requirement of the action taken by the regulation (WAC 508-60-040(4)),

and the objective of the legislation (RCW 86.16.010); nor is it argued by appellant to the contrary. Testimony indicated there was not only danger to persons living on a floodway, but structures built in a floodway could also endanger life and property downstream. *See* Sax, *Takings and the Police Power,* 74 Yale L.J. 36 (1964); *see,* passim, Bosselman, Callies & Banta, *The Taking Issue, supra.*

Finally, the regulations in question do not prohibit the building of all structures—only those for human habitation. The restrictions are not applicable to the 30 percent of the land which lies on the flood fringe. There is no finding, nor is there persuasive testimony, that these restrictions prohibit the appellant from making a profitable use of its property. *See Carlson v. Bellevue,* 73 Wn.2d 41, 435 P.2d 957 (1968). It also should be noted it was not the State which placed appellant's property in the path of floods. Nature has placed it where it is and, if respondent had done nothing with respect to flood–plain zoning, the property would still be subject to physical realities. *See* Dunham, *Flood Control Via the Police Power,* 107 U. Pa. L. Rev. 1098 (1959).

Both the statute, RCW 86.16, and the regulations thereunder are a proper exercise of the police power. There is no constitutionally invalid taking.

Affirmed.

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, UTTER, BRACHTENBACH, HOROWITZ, and HICKS, JJ., concur.