[Nos. 47969–1, 48153–9.  En Banc.  October 14, 1982.]

GORDON JEFFERY, *Appellant,* v. LEROY MCCULLOUGH, ET AL, *Respondents.*

MARK FREEMAN, *Appellant,* v. LEROY MCCULLOUGH, ET AL, *Respondents.*

*Olwell, Boyle & Hattrup,* by *Clinton H. Hattrup* and *Rodney T. Harmon,* for appellants.

*Douglas N. Jewett, City Attorney,* and *James E. Fearn, Jr., Assistant,* for respondent McCullough.

*Perkins, Coie, Stone, Olsen & Williams,* by *Lawrence B. Ransom* and *Judd H. Lees,* for respondents Swigard, et al.

STAFFORD, J.—We are asked to decide the constitutionality of Seattle City Ordinance 109280 (codified as Seattle Municipal Code ch. 7.20) which regulates the eviction of floating homes from their moorages and establishes a procedure for the review and regulation of moorage fee increases. We find the ordinance constitutional on its face and in so ruling affirm the judgment of the trial court.

Ordinance 109280 took effect on August 22, 1980. Essentially, it repeals ordinance 107012 (the moorage rent control ordinance at issue in *Kennedy v. Seattle,* 94 Wn.2d 376, 617 P.2d 713 (1980)).

Under section 5(1) of ordinance 109280, floating homeowners subject to a moorage fee increase may file a petition for factfinding with a hearing examiner if they believe the increase is unreasonable. Under section 5(2), however, moorage owners are permitted to increase their fees without a hearing if the increase does not exceed either their proportional share of increased property taxes and other designated "expenses" or the "CPI factor" (Consumer Price Index factor), whichever is greater. All rent increases in effect in July 1979 are subject to the provisions of ordinance 109280.

As originally enacted, section 5(3) defined the "CPI factor" as follows:

The CPI factor for a floating home moorage shall be

determined by multiplying the percentage increase in the CPI since the last moorage fee increase by the current moorage fee, and by multiplying the product thereof by a fraction, the numerator of which shall be the number of square feet of land at the subject moorage owned by the moorage owner and the denominator of which shall be the total number of square feet of land in the moorage (privately owned land plus leased land). Floating home owners may petition for a fact–finding whenever a proposed moorage fee increase exceeds the moorage owner's actual increase in operating expenses as listed above or the CPI factor described above, whichever is greater.

Ordinance 109280, § 5(3).[1]

Ordinance 109986, effective July 7, 1981, amended the definition of the CPI factor. The amendment changed the numerator employed in the fraction to exclude land leased from the government. Thus, according to the new definition moorage owners who either lease from the State or use an adjacent street may only raise their rent by the percentage of the CPI factor increase attributable solely to privately owned or leased land. In contrast, moorage owners who either own all of their moorage land or lease it from private parties may increase their rent in proportion to the increase in the CPI factor attributable to their total land.

In May of 1979, 1980, and 1981, appellant Gordon Jeffery, an owner and operator of moorage property on Lake Union in Seattle, announced rent increases effective

---

[1]The following explanation found in Brief of Respondent/Intervenor at pages 7–8 is illustrative of how the CPI factor works. "If one assumes the existence of a moorage located entirely over privately owned land at which the monthly moorage fee is $100 per month, and also assumes that the percentage increase in the CPI since the last moorage fee increase has been 12%, the moorage fee could be raised by an amount up to $12 per month without being subjected to a fact–finding. [(12% x $100) x 100/100 = $12.] This rule would apply no matter how 'unreasonable' the original $100 per month fee and/or the demanded increase might have been. However, if one assumes the existence of a moorage which comprises 50% privately owned land and 50% land leased from the state or used by virtue of a city street use permit, then the moorage operator could only get an automatic, nonreviewable increase (assuming a $100 per month fee and a 12% CPI increase) of $6 per month. If the moorage owner demanded an increase in an amount greater than $6 per month, the increase (and the underlying fee) would be reviewable. [(12% x $100) x 50/100 = $6.]"

July of 1979,[2] 1980, and 1981.[3] Jeffery's tenants filed petitions for factfinding challenging all three rent increases. Thereafter, Jeffery petitioned the superior court for a writ of prohibition to restrain Leroy McCullough, hearing examiner in the factfinding hearings and respondent herein, from proceeding with the hearings. The parties stipulated the floating homeowners affected by the rent increases could intervene in the superior court action. A show cause hearing was held and the Superior Court denied the petition. (Jeffery v. McCullough, cause 47969-1.)

The partnership of Freeman, Gibson and Jeffery (hereinafter Freeman), also an owner and operator of moorage property on Lake Union, announced rent increases effective November 1979 and July 1981. In response, the tenants filed petitions for factfinding challenging each rent increase pursuant to ordinance 109280. Freeman also filed a petition for writ of prohibition against hearing examiner McCullough. The petition was denied. (Freeman v. McCullough, cause 48153-9.)

Both Jeffery and Freeman appealed the denial of the writ on the grounds that the ordinance is violative of equal protection and due process. The two causes were consolidated for direct review.

Appellants contend the distinction made between moorage owners who own their land or lease it from private individuals and those who lease from the government violates equal protection. It is urged that the disparate treatment is discriminatory and is not rationally related to the legitimate purpose of the ordinance.

██ ██ Since this controversy involves neither a suspect

---

[2]Without passing upon the validity or invalidity of the decision, we note that the Court of Appeals recently upheld the rent increase for 1979. *See Jeffery v. Weintraub,* 32 Wn. App. 536, 648 P.2d 914 (1982).

[3]Jeffery and appellant Freeman have since sent their tenants notices slightly reducing the rent increases so as to conform to the Consumer Price Index for All Items, All Urban Consumers, Seattle, Washington (CPI–U) for November 1977 to July 1981.

class nor a fundamental right, we need only examine the ordinance with minimal scrutiny. *Nielsen v. Washington State Bar Ass'n,* 90 Wn.2d 818, 820, 585 P.2d 1191 (1978); *Aetna Life Ins. Co. v. Washington Life & Disab. Ins. Guar. Ass'n,* 83 Wn.2d 523, 528, 520 P.2d 162 (1974). Moreover, the ordinance is presumed constitutional, and the party challenging the classification has the heavy burden of overcoming the presumption of its constitutionality. *Yakima Cy. Deputy Sheriff's Ass'n v. Board of Comm'rs,* 92 Wn.2d 831, 835, 601 P.2d 936 (1979).

When measuring the constitutionality of a legislative classification under minimal scrutiny standards, we must decide: (1) whether the classification applies alike to all members within the designated class; (2) whether there is some basis in reality for reasonably distinguishing between those within and those without the class; and (3) whether the challenged classification has any rational relationship to the purposes of the challenged statute. *Yakima Cy. Deputy Sheriff's Ass'n,* at 835–36.

All three prongs of the minimal scrutiny test have been satisfied. First, all members within each designated class (*i.e.,* the class of moorage owners who do not lease public land, and the class of moorage owners who do lease public land) are treated equally within their respective classes. As to the second prong, there is some basis in reality for the distinction between the classes of moorage owners. The record contains evidence indicating that moorage owners who lease public property have a much lower overhead than those who own the property outright. Thus, the need for rent increases by moorage owners who lease public property is not the same as the need of moorage operators who do not lease public land.

Finally, the challenged classification is rationally related to the ordinance's stated purpose of preventing evictions through arbitrary action or unreasonable rent increases. It subjects those increases in excess of the CPI factor to a factfinding hearing to determine the reasonableness of the increase. Pursuant to these hearings, a hearing examiner

determines whether the "moorage fee increase is necessary to assure a fair and reasonable return to the moorage owner." Ordinance 109280, § 6. Thus, the ordinance does not put a ceiling on rent increases; it merely requires a hearing for those increases exceeding the CPI factor.

■ Appellants next contend section 5(3) of Seattle City Ordinance 109280, as amended by ordinance 109986, deprives them of their property without due process of law and without just compensation. *See* U.S. Const. amend. 14 and Const. art. 1, § 3, § 16 (amendment 9). In order to withstand such a constitutional challenge, the regulation must be reasonable and not unnecessarily prohibitory or confiscatory. *See Kennedy v. Seattle,* 94 Wn.2d 376, 617 P.2d 713 (1980). We must balance "the public interest in regulating the use of private property against the interests of private landowners not to be encumbered by restrictions on the use of their property." *Kennedy,* at 384, quoting from *Maple Leaf Investors, Inc. v. Department of Ecology,* 88 Wn.2d 726, 731, 565 P.2d 1162 (1977).

In *Kennedy,* we upheld all but one[4] of the rent control provisions of ordinance 107012, predecessor to the rent control provision at issue, as a valid exercise of the City's police power. In so ruling, we found that a valid public purpose was involved; that the regulation was substantially related to the evil sought to be cured; and that the rates set were reasonable and not unnecessarily prohibitory or confiscatory. *Kennedy,* at 381–83. More is not required, for we "will not examine the motives of the legislative body; [we] will not require factual justification for the legislation if it can reasonably be presumed; and [we] will not weigh the wisdom of the particular legislation enacted." *Kennedy,* at 381, quoting from *Petstel, Inc. v. County of King,* 77 Wn.2d 144, 155, 459 P.2d 937 (1969).

---

[4]We deemed section 2 of ordinance 107012 (which made it unlawful for a moorage owner to give notice or evict a houseboat unless one of six conditions was present) unconstitutional as the limitations were so restrictive as to constitute an unlawful taking.

Our reasons for upholding the rent control provisions at issue in *Kennedy* are equally applicable to the provisions at issue in the instant case. As in *Kennedy*, we have legislation designed both to regulate the eviction of floating homes from their moorages and to ensure moorage owners of a reasonable return for their investment. Moreover, the ordinance is substantially similar to the one approved of in *Kennedy*. Since the purpose behind the legislation is legitimate, its method is rationally related to its purpose, and it is not unduly confiscatory, we find neither a due process violation nor an unlawful taking.

In sum, we hold ordinance 109280, as amended by ordinance 109986, constitutional on its face and affirm the trial court's denial of appellants' writs of prohibition. Because of our ruling today, we need not address appellants' other claims.

It is so ordered.

BRACHTENBACH, C.J., and ROSELLINI, UTTER, DOLLIVER, WILLIAMS, DORE, DIMMICK, and PEARSON, JJ., concur.

Reconsideration denied December 3, 1982.