IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CRISTOBAL MONDRAGON and JANE DOE MONDRAGON, husband and wife, and the marital community composed thereof; and ALL JOHN DOE AND JANE DOE OCCUPANTS; and VINCE SAMPSON and ANGELA SAMPSON, husband and wife, and the marital community comprised thereof, | ) ) ) ) ) ) ) ) ) ) | No. 79547-3-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |
| Appellant, | ) ) ) | |
| v. | ) ) | |
| ROBINSON PROPERTIES & INVESTMENTS, LLC, a Washington Limited Liability Company, | ) ) ) ) | |
| Respondent. | ) ) ) | FILED: February 24, 2020 |

HAZELRIGG, J. — Vince and Angela Sampson (collectively the Sampsons) seek reversal of summary judgment entered against them in a breach of contract action stemming from their assignee's default in rent and unlawful detainer of a commercial premises. They bring multiple challenges to the underlying unlawful detainer judgment against the assignee, the order finding them liable for breach of the lease and assignment agreements, and the order imposing damages and attorney fees. Although the court did not err in finding them liable for the breach

of contract, it did err in imposing liability on Angela[1] Sampson as an individual and in calculating damages. We affirm in part and reverse the award of damages and remand to amend orders and judgment by removing any indicia of individual liability as to Angela Sampson.

## FACTS

Robinson Properties & Investments, LLC, (Robinson Properties) of which William Robinson[2] (Robinson) is an authorized member, owns a commercial property in Everett. In 2015, Vince Sampson executed a three-year lease with Robinson Properties to rent suite A7 of the property until May 31, 2018. Rent for the period relevant to this case was $2,200 per month, plus utilities and a pro rata share of charges for the common facilities known as triple net expenses (NNN). The lease obligated the tenant to keep the premises in good condition and surrender the premises at the expiration of the lease "in the same condition in which they are received, reasonable wear and tear and damage by fire or storm excepted." The lease provided that it could not be "assigned, transferred, encumbered, or sublet" without Robinson Properties' consent and that "[n]o assignment or subLease [sic] shall relieve Tenant from primary liability on this Lease." Section 52 of the lease, entitled "ATTORNEY FEES," provides that:

> If Landlord shall retain an attorney for the purpose of collecting any monies due from the Tenant or otherwise enforcing or construing the Lease, Tenant shall pay the reasonable fees for such attorney for his service and reasonable costs regardless of whether or not such costs

---

[1] For clarity, Vince and Angela Sampson will be referred to individually by their first names. No disrespect is intended.

[2] Robinson Properties refers to the business entity. Robinson refers to the individual, William Robinson, when he was acting on behalf of Robinson Properties.

- 2 -

and attorney's fees are incurred with or without litigation, in a bankruptcy court, or on appeal.

In 2017, Vince and Robinson jointly executed an assignment of the lease for unit A7 to assignee Cristobal Mondragon, who also rented units A5 and A6. Mondragon was to assume the remainder of Vince's lease until it ended on May 31, 2018, at which time a separate lease between Robinson Properties and Mondragon for unit A7 would come into effect. The assignment specified that "Assignor(s) shall remain fully liable and responsible to the Lessor for fulfillment of all the obligations of the Assignor(s) under the Lease." Vince would be released from the lease on its end date of May 31, 2018.

On January 3, 2018, Robinson informed Vince via email that Mondragon was delinquent in rent payments and that he had "heard a rumor that [Mondragon] moved back to Mexico" and was no longer able to contact him. Robinson wrote that Vince was "still the Guarantor" for rent payments until the termination of the lease and assignment. He stated that the outstanding rent of $13,824.85 needed to be paid by January 6, 2018 to prevent further legal action.

On or around January 12, 2018, Robinson Properties served a notice to pay rent or vacate to the Mondragons and the Sampsons. Neither party tendered the funds to cure the notice. Robinson Properties brought an unlawful detainer action against Mondragon and his wife, Jane Doe Mondragon, on January 25, 2018. Robinson asserted that the Mondragons were personally served with the summons and complaint for the unlawful detainer. The court issued a writ of restitution restoring the right of possession to the landlord and a judgment by default on February 6, 2018. The court found Mondragon liable for a principal judgment

amount of "$59,503.50 ($29,751.75 in rent x 2 by application of RCW 59.12.170)" plus attorney fees of $3,007.50 and court costs of $1,065.05.

On February 27, 2018, Robinson Properties filed an amended complaint adding Vince Sampson and Jane Doe Sampson as defendants and seeking damages for breach of contract. The Sampsons filed an answer asserting multiple affirmative defenses and including a cross-claim against the Mondragons for breach of contract and implied indemnity.

Robinson Properties moved for summary judgment on the issues of liability and damages. In their response opposing the summary judgment motion, the Sampsons argued that the court did not have subject matter jurisdiction over the original unlawful detainer action because Mondragon had abandoned the property and physical possession was not at issue. They contended that CR 60(b) required the unlawful detainer judgment to be set aside as a matter of law because it was void for lack of subject matter jurisdiction.

On September 7, 2018, the court granted summary judgment in favor of Robinson Properties on the issue of liability and continued the motion for summary judgment on the issue of damages to allow for further discovery. The court found that there was no genuine issue of material fact regarding the Sampsons' liability for the breach of the lease and assignment.

On January 8, 2019, the court granted summary judgment for Robinson Properties for damages from the breach of the lease. The court doubled the damages "[p]ursuant to RCW 59.12.170" for a total of $59,543.50, plus pre-judgment interest, reasonable attorney fees, and court costs. The court entered a

finding that "[t]he sum of $17,702.30 in attorney's fees and $578.00 in costs are reasonable sums." The court did not enter separate findings of fact and conclusions of law regarding the award of attorney fees and costs.

Ten days later, the Sampsons filed a motion to alter the judgment under CR 59. They argued that the award of double damages under the unlawful detainer statute was impermissible, that Angela Sampson could not be held liable as an individual, and that the attorney fee award lacked evidentiary support and adequate legal justification. The court found that the motion was timely filed but denied the motion. The court also found that "Plaintiff's attorney's fees and costs, as delineated in the Affidavit of Plaintiff's Counsel dated January 23, 2019, are reasonable fees and expenses actually incurred and reasonably necessary for the litigation of this action." The Sampsons appealed.[3]

## ANALYSIS

### I.    Standard of Review

We review summary judgment orders de novo, "considering the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party." Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). The trial court shall grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). The

---

[3] The Sampsons' Notice of Appeal (filed 2/8/19) requests review of the Judgment (entered 2/6/18), Order Granting in Part Motion for Summary Judgment (As to Liability) and Granting in Part Motion to Continue (As to Damages) (entered 9/7/18), and Order Granting Plaintiff's Motion for Summary Judgment Against Defendants Sampson Re: Damages (entered 1/8/19). In their opening brief, they also request review of the post-judgment Order Denying Motion to Alter Judgment / Motion for Reconsideration (entered 3/20/19) under RAP 2.4(f)(3), which allows review of a trial court's order on a timely CR 59 motion.

moving party bears the initial burden of showing the absence of an issue of material fact. Young v. Key Pharm., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989).

Motions to alter, amend, or reconsider a judgment are within the sound discretion of the trial court, and a reviewing court will not reverse a trial court's ruling absent a showing of manifest abuse of discretion. Wilcox v. Lexington Eye Inst., 130 Wn. App. 234, 241, 122 P.3d 729 (2005); Worden v. Smith, 178 Wn. App. 309, 322–23, 314 P.3d 1125 (2013). A court abuses its discretion when the decision is based on untenable grounds, untenable reasons, or an erroneous view of the law. Worden, 178 Wn. App. at 323.

II.     Unlawful Detainer Judgment

The Sampsons challenged the February 6, 2018 judgment on the unlawful detainer action against the Mondragons in their notice of appeal and argue against its validity in the briefing. Robinson Properties responds in a footnote that "the Appellants have no standing to assert possession." This appears to raise the question of whether the Sampsons may appeal the judgment in the unlawful detainer action because they were not parties to the case at the time the judgment was entered.

"Only an aggrieved party may seek review by the appellate court." RAP 3.1. A party is aggrieved when a decision affects their pecuniary interests or personal rights or imposes a burden or obligation on them. Randy Reynolds & Assocs., Inc. v. Harmon, 193 Wn.2d 143, 150, 437 P.3d 677 (2019). The decision must operate prejudicially and directly on the party's rights or interests; "'the right invaded must be immediate, not merely some possible, remote consequence.'" Sheets v.

Benevolent & Protective Order of Keglers, 34 Wn.2d 851, 855, 210 P.2d 690 (1949) (quoting 4 C.J.S. 356, Appeal and Error, § 183(b)(1) (1937)). "[U]nder some narrow circumstances, persons who were not formal parties to trial court proceedings, but who are aggrieved by orders entered in the course of those proceedings, may appeal as 'aggrieved parties.'" Mestrovac v. Dep't of Labor & Indus., 142 Wn. App. 693, 704, 176 P.3d 536 (2008) (quoting State v. G.A.H., 133 Wn. App. 567, 574, 137 P.3d 66 (2006)).

In Sheets, the court found that the appellants were not aggrieved parties entitled to appeal because the portion of the judgment appealed contained "no denial of a personal or property right to them as individuals; nor does it impose upon them, as individuals, a burden or obligation." 34 Wn.2d at 855. In Mestrovac, this court found that the Board of Industrial Insurance Appeals was an aggrieved party entitled to appeal superior court orders in a case to which it was not a party when the orders "imposed upon the Board a burden and an obligation by holding it liable for Meštrovac's interpreter costs and requiring it to pay thousands of dollars in attorney fees for attempting to intervene." 142 Wn. App at 704.

Although the Sampsons were later added to the case and the unlawful detainer judgment against the Mondragons appears to have been used to compute the damages for breach of contract, the Sampsons were not directly affected by the unlawful detainer judgment. The judgment itself does not impose any direct burden on them or infringe on any of their rights. Therefore, the Sampsons are not aggrieved parties within the meaning of RAP 3.1 and may not appeal the unlawful detainer judgment against the Mondragons.

III. Liability

A. Validity of Liability Order

The Sampsons contend that the summary judgment orders in the breach of contract action are void because the court lacked subject matter and personal jurisdiction over them in the unlawful detainer action. They argue that the court lacked jurisdiction in the unlawful detainer because they had no actual possession or right of possession over the premises and were not named as defendants or served with the summons and complaint for the unlawful detainer portion of the proceeding. Robinson Properties responds that the court had proper jurisdiction because it brought its claims against the Sampsons after the issue of possession had been resolved and after the case had been converted to an ordinary breach of contract action.

Superior courts in Washington are courts of general jurisdiction, with authority to hear and decide cases in equity and cases at law for which jurisdiction is not vested by law in another court. Wash. Const. art. IV, § 6. An unlawful detainer action is a summary proceeding authorized by statute to determine the narrow issue of right to possession of a premises between landlord and tenant. Munden v. Hazelrigg, 105 Wn.2d 39, 45, 711 P.2d 295 (1985). "In an unlawful detainer action, the court sits as a special statutory tribunal to summarily decide the issues authorized by statute and not as a court of general jurisdiction with the power to hear and determine other issues." Granat v. Keasler, 99 Wn.2d 564, 571, 663 P.2d 830 (1983) (emphasis omitted). A court's subject matter jurisdiction in an unlawful detainer proceeding is "limited to the question of possession and

related issues such as restitution of the premises and rent." Munden, 105 Wn.2d at 45. "A judgment entered by a court lacking subject matter jurisdiction is void." Angelo Prop. Co. LP v. Hafiz, 167 Wn. App. 789, 808, 274 P.3d 1075 (2012).

After the right to possession is no longer at issue, an unlawful detainer proceeding "may be converted into an ordinary civil suit for damages, and the parties may then properly assert any cross claims, counterclaims, and affirmative defenses." Munden, 105 Wn.2d at 46. In other words, after the proceeding is converted, the court regains its usual status as a court of general jurisdiction with the authority to hear issues outside of the narrow scope of unlawful detainer. See Granat, 99 Wn.2d at 571. Allowing this conversion promotes judicial economy by minimizing the number of lawsuits filed and "spares the expense and inconvenience to all parties of maintaining two suits." Munden, 105 Wn.2d at 47.

The Sampsons argue that the court had no subject matter jurisdiction over the breach of contract claims against them because they had not been named as defendants in the unlawful detainer. The trial court settled the issue of right of possession when it issued the writ of restitution and judgment against Mondragon. Once possession was no longer at issue, Robinson Properties amended its complaint to convert the suit to an ordinary civil suit for damages. The amended complaint does not profess to be an action for unlawful detainer, nor does it request restitution of possession. The court was once again sitting as a court of general jurisdiction and had subject matter jurisdiction over the claim for breach of contract. The liability order is not void for lack of jurisdiction.

B. Individual Liability of Angela Sampson

The Sampsons next contend that the court erred in imposing liability for damages on Angela Sampson as an individual because she was not a signatory to either the lease or the assignment. At oral argument, Robinson Properties conceded that Angela could not be held individually liable for breach of contract. We agree.

A spouse who incurs an obligation or undertakes an enterprise during marriage presumptively does so for the benefit of the marital community. Or. Improvement Co. v. Sagmeister, 4 Wash. 710, 711, 30 P. 1058 (1892). Although the marital community is not a separate legal entity and the property of the community is owned by the spouses, the law distinguishes between the spouses' separate and community property. deElche v. Jacobsen, 95 Wn.2d 237, 243, 622 P.2d 835 (1980). If a marital community is held liable for an obligation, the debt may be satisfied from community property. Id. If a party is held individually liable for an obligation, the debt may be satisfied from the party's separate property. Id.

The Sampsons cite only one authority from Max L. Wells Trust v. Grand Cent. Sauna & Hot Tub Co. of Seattle to support their argument that Angela should not be held individually liable, the relevant facts of which are nearly identical to this case. See, 62 Wn. App. 593, 815 P.2d 284 (1991). In Wells Trust, a husband signed a lease in his capacity as managing partner of Grand Central and the court entered a judgment against the partners of the business and their wives individually. Id. at 599, 603–04. On appeal, the general partners of Grand Central conceded that a judgment could be entered against them individually and their

- 10 -

marital communities, but argued that the judgment should not have been entered individually against their wives. Id. at 603.

"A spouse's act creating both community liability and separate liability in the acting spouse ordinarily does not create separate liability in the nonacting spouse who has not participated in the transaction, that is, it ordinarily does not create three-way liability." Id. at 604 (quoting H.M. Cross, The Community Property Law in Washington (Revised 1985), 61 Wash. L. Rev. 17, 122 (1986)). The Wells Trust court analyzed the issue as follows:

> Here, over the strenuous objection of Grand Central and its partners, the court entered judgment against the spouses of two of the partners, individually. There was no pleading that these women were partners themselves, nor that they signed the lease as a partner. There was no evidence entered at trial to create individual liability in either of these women. The lease was signed only by David Stadtner as the managing partner. The trial court erred in entering individual judgments against the spouses of partners Stadtner and Bruschera.

Id. The court appears to have accepted the concession that the husbands and marital communities could be held liable for the obligation, but determined that the liability did not extend to the separate property of the uninvolved wives.

Wells Trust is directly applicable to the present case. There is no indication that Angela signed the lease or was a partner in the business on whose behalf the lease was signed. Angela and her separate property could not be held liable for the obligation, and the court erred in entering the judgment against her as an individual.[4]

---

[4] The Sampsons argued briefly at oral argument that Angela's half of the community property also could not be held liable for the obligation. On review of an order granting summary judgment, we consider only evidence and issues which were called to the attention of the trial court before entry of the order. RAP 9.12. The Sampsons did not specifically argue the issue of

C. Summary Judgment on Liability

Apart from challenging Angela's individual liability, Robinson Properties argues that the Sampsons otherwise failed to offer evidence denying their contractual liability and therefore the court properly granted summary judgment in Robinson Properties' favor.

As stated above, courts consider the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party on summary judgment to determine if there is a genuine issue of material fact. Keck, 184 Wn.2d at 370. When the language of a contract is clear and unambiguous, courts will enforce the contract as written. Ley v. Clark Cty. Pub. Transp. Benefit Area, 197 Wn. App. 17, 24, 386 P.3d 1128 (2016).

In support of its motion for summary judgment, Robinson Properties submitted an affidavit of William Robinson and attached the lease agreement signed by Robinson and Vince Sampson; the assignment and assumption of lease signed by Robinson, Vince, and Mondragon; and order authorizing the writ of restitution in the unlawful detainer action against the Mondragons. Robinson asserted that there was a balance of unpaid rent due and that Mondragon had failed to maintain the condition of the property.

In response, Vince asserted that Robinson Properties failed to maintain the heating and cooling system on the premises while he was a tenant in possession, before the execution of the assignment. He also attached the email showing that

community liability before summary judgment was entered or on reconsideration. Because the issue of community liability was not raised before the trial court, we will not consider it on appeal.

- 12 -

Robinson had made him aware of the default in rent and asserted that he did not cure the notice to pay rent or vacate.

Viewed in the light most favorable to the Sampsons, there was no genuine dispute of material fact regarding their liability under the lease and assignment. By its plain terms, the lease obligated Vince to pay the rent and charges due, even if he assigned his rights under the lease. The assignment reaffirmed this responsibility. The Sampsons do not dispute that Mondragon defaulted in rent and caused damage to the premises, nor do they dispute that they did not tender the unpaid funds when made aware of the delinquency. The bulk of the Sampsons' argument against summary judgment addressed the alleged invalidity of the unlawful detainer judgment against the Mondragons. However, even if the unlawful detainer judgment was void for the reasons they advance, it would not affect their liability under the contracts for the unpaid rent and charges. The court did not err in granting summary judgment on the issue of liability.

IV.    Damages

The Sampsons also argue that the court erred in entering summary judgment on the issue of damages. A party may recover from a breach of contract those damages which arise naturally from the breach or which the parties could be reasonably supposed to have understood as a probable result of the breach when the contract was signed. Gaglidari v. Denny's Rests., Inc., 117 Wn.2d 426, 446, 815 P.2d 1362 (1991). Because the Sampsons are liable for the unpaid monies under the lease and damage to the property, Robinson Properties was entitled to an award of damages. Although they agree that some award of damages would

be appropriate if they were liable under the contracts, the Sampsons contend that the trial court erred in determining the appropriate amount of damages. We agree.

A. Imposition of Double Damages

The Sampsons argue that the award of damages is void because the court awarded double damages "pursuant to RCW 59.12.170" even though the Sampsons were not parties to the unlawful detainer action. Robinson Properties responds that because Mondragon was responsible for double damages under the unlawful detainer statute and the Sampsons were liable to the same extent as Mondragon, the damages were properly calculated.

A tenant unlawfully detains a premises when, after a default in rent, a landlord requires the tenant to pay the rent due within three days or vacate and the tenant continues in possession in person or by subtenant without paying. RCW 59.12.030(3). If a defendant has been found guilty of unlawful detainer after default in the payment of rent, the court shall "assess the damages occasioned to the plaintiff" and enter judgment against the defendant "twice the amount of damages thus assessed and of the rent, if any, found due." RCW 59.12.170. This court interpreted that language to authorize "a compensatory award during the lawful possession period (past due rent) and a doubling of damages incurred for the unlawful detainer period." Sprincin King St. Partners v. Sound Conditioning Club, Inc., 84 Wn. App. 56, 65, 925 P.2d 217 (1996). The unlawful detainer period begins when the three-day period within which the landlord has required the tenant to pay rent or vacate expires. Id. at 63. The Sprincin court explained that "[t]he unquestionable purpose of double damages is to penalize the tenant for the refusal

- 14 -

to surrender possession when the tenancy terminates" and to "hasten[] restitution to the owner." Id. at 65.

Washington law recognizes a distinction between a sublease and an assignment of a lease. McDuffie v. Noonan, 176 Wash. 436, 439, 29 P.2d 684 (1934). "[A]n assignment of a lease occurs when the lessee/assignor transfers his or her whole interest in the lease without retaining any reversionary interest." OTR v. Flakey Jake's, Inc., 112 Wn.2d 243, 247, 770 P.2d 629 (1989). When a tenant transfers less than his entire interest in the lease, retaining a reversionary interest, the conveyance is a sublease. McDuffie, 176 Wash. at 439. "Contractually, neither the act of subletting nor assigning absolves the [assignor] of his express duty to pay rent to his landlord, absent a release by the landlord." Flakey Jake's, 112 Wn.2d at 250 (emphasis omitted). In both instances, the assignor remains liable for the rent under a privity of contract theory. Id. When a valid assignment occurs, the assignee comes into privity of estate with the landlord and the privity of estate between the landlord and assignor is terminated. Id. at 251–52; National Bank of Commerce of Seattle v. Dunn, 194 Wash. 472, 492, 78 P.2d 535 (1938).

An assignor who executes an absolute, unconditional assignment of a leasehold, reserving no express or implied right of reentry on breach of condition, retains no authority over the assignee's possession of the subject premises. Brickum Inv. Co. v. Vernham Corp., 46 Wn. App. 517, 522–23, 731 P.2d 533 (1987). In that instance, the assignee is not a "subtenant" for purposes of the unlawful detainer statute. Id. at 523. Because the assignor has neither

constructive nor actual possession of the premises in this situation, the landlord may not bring an unlawful detainer action against the assignor. Id.

Here, the Sampsons assigned their entire interest under the lease to Mondragon, retaining no right of reentry or reversionary interest. Because they executed a true assignment, they retained no authority over Mondragon's possession of the premises and would not have been proper defendants in the unlawful detainer action. Their privity of estate with Robinson Properties was terminated when they executed the assignment, and they remained liable only under a privity of contract theory. Therefore, they are liable only for whatever damages stem from their breach of the contracts.

Generally, the injured party in a breach of contract action is entitled to recovery of all damages that accrue naturally from the breach and entitled to be put into as good a pecuniary position as if the contract had been performed. Eastlake Const. Co. v. Hess, 102 Wn.2d 30, 39, 686 P.2d 465 (1984). Robinson Properties argues that the lease and assignment made the Sampsons liable for all damages stemming from Mondragon's breach. It points to the language of the assignment that it contends supports this argument:

> The Assignment specifically speaks to the breadth and scope of the Appellants' liability:
> "Assignor(s) shall remain fully liable and responsible to the Lessor for fulfillment of all the obligations of the Assignor(s) under the Lease."
> . . . .
> Based on this language, the Trial Court properly established that the Appellants are liable in contract for all damages caused to Robinson by Mondragon's breach of the Lease.

Under the lease, the Sampsons were obligated to pay the rent and charges due and return the premises in the same condition in which it was delivered. The language of the assignment makes clear that the Sampsons remained liable to Robinson Properties for fulfillment of their own responsibilities under the lease. However, this language does not, as Robinson Properties contends, make the Sampsons responsible for any and all damages stemming from their assignee's breach of contract.

Robinson Properties contends that this result was bargained for when the parties executed the assignment and that it is entitled to the benefit of that bargain, including the statutory double damages. But neither contract mentions the unlawful detainer statutes or the possibility of double damages during an unlawful detainer period. Robinson Properties is entitled to an award of damages against the Sampsons for all damages that accrue naturally from their own breach, not their assignee's. The Sampsons should be made to put Robinson Properties in the same pecuniary position that it would have been in if the Sampsons had performed their own obligations under the contracts, not to answer for their assignee's statutory unlawful detainer of the premises.

Also, the purposes of the double damages statute, restitution of the premises to the owner and penalizing the tenant for refusal to surrender the property once the tenancy is terminated, are not served by passing double damages along to an assignor who did not have any right to possession of the premises. As noted above, Robinson Properties could not have proceeded against the Sampsons in unlawful detainer. Robinson Properties conceded at oral

argument that the Sampsons could not have brought an unlawful detainer action against Mondragon because they had assigned their right of possession. The Sampsons had no way to restore possession to Robinson Properties after Mondragon's breach.

The court erred in holding the Sampsons responsible for the statutory double damages imposed against Mondragon during the unlawful detainer period.[5]

### B. Summary Judgment on Damages

The Sampsons argue that the trial court erred in calculating damages based on a document that included past-due and future rents for three units of the leased premises when only one unit was the subject of the lease. They contend that this calculation raised questions of fact that precluded summary judgment.

In the Sampsons' opposition to summary judgment on the issue of damages, they argued that double damages under the unlawful detainer statute were inappropriate and disputed Robinson Properties' calculation of NNN charges. The Sampsons' response also stated that "[t]he Plaintiff seeks $15,946.90 in damages for rent, triple net, utilities and late fees. The defendants are willing to agree to this amount of damages for rent, subject to clarification of triple net, but not double damages given the argument made above." This concession appears to reference the rent and charges due for the period of January 1, 2018 through May 31, 2018.

---

[5] Because we find that the double damages were improperly imposed against the Sampsons, we do not reach the Sampsons' argument, conceded in part by Robinson Properties, that the double damages were improperly calculated.

In an affidavit submitted with Robinson Properties' reply, Robinson stated that the three-day notice "contained a balance of $13,824.85 rent due[,]" which "was a net balance due through January 1, 2018." He stated this number again as "[r]ents through January 1, 2018" later in the affidavit but did not show how this number was calculated. Robinson also incorporated by reference his four prior affidavits to the court filed January 24, 2018, February 5, 2018, April 5, 2018, and June 8, 2018.

In his affidavit dated April 5, 2018 and submitted with Robinson Properties' motion for summary judgment, Robinson explained the requested damages. The affidavit included a calculation of the rents, NNN charges, electric bills, and late fees due for the period of January 1, 2018 through May 31, 2018. He asserted that the "balance due as of January 1, 2018 was $13,824.85" and attached a statement purporting to show charges due through that date as an exhibit. The statement is dated January 12, 2018, but the last entry is an invoice dated December 1, 2017. That invoice appears to show a balance of $10,407.65 due by December 5, 2017. The document includes items labeled "500 RENT MONTHLY A6" and "500 NNN MONTHLY A6." Robinson does not provide any explanation of how the balance due as of January 1, 2018 was calculated.

He also submitted as an exhibit to the affidavit the order on the show cause hearing in the unlawful detainer action, in which the court described the premises in question as suite A7, found that the Mondragons failed to pay rent between September 2017 and January 2018, and found the "total past due rent balance" to be $13,824.85. It does not detail how this figure was calculated.

Viewing the evidence in the light most favorable to the Sampsons, Robinson Properties did not carry its burden to show the absence of an issue of material fact regarding damages. The apparent absence of a calculation of the rent and charges due through January 1, 2018 anywhere in the record is insufficient to establish the amount of damages owed. We vacate the order granting summary judgment on the issue of damages and remand for a new damages order.

V.    Award of Attorney Fees and Costs

The Sampsons also argue that the award of attorney fees and costs to Robinson Properties should be vacated. They contend that the court failed to conduct a reasonableness inquiry or lodestar analysis when calculating the award and included fees and costs that predated the Sampsons' involvement in the dispute.[6]

Trial courts may award attorney fees when a private agreement, a statute, or a recognized ground of equity authorizes such an award. Fisher Props., Inc. v. Arden-Mayfair, Inc., 106 Wn.2d 826, 849–50, 726 P.2d 8 (1986). Here, the lease provided that the Sampsons would be responsible for Robinson Properties' reasonable attorney fees and costs stemming from nonpayment of rent or enforcement of the lease. The reasonableness of an award of attorney fees is reviewed for abuse of discretion. Rettkowski v. Dep't of Ecology, 128 Wn.2d 508,

---

[6] The Sampsons argue that they cannot be held liable for the fees and costs relating solely to the unlawful detainer action against the Mondragons. They do not cite any authority in support of this contention. "Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration." Palmer v. Jensen, 81 Wn. App. 148, 153, 913 P.2d 413 (1996). We decline to consider this issue.

519, 910 P.2d 462 (1996). "The trial court abuses its discretion only when the exercise of its discretion is manifestly unreasonable." Id.

Generally, Washington follows the lodestar method of calculating reasonable attorney fees. Mahler v. Szucs, 135 Wn.2d 398, 433, 957 P.2d 632 (1998), overruled on other grounds by Matsyuk v. State Farm Fire & Cas. Co., 173 Wn.2d 643, 272 P.3d 802 (2012). The trial court determines the number of hours reasonably expended in the litigation from documentation of the work performed and the category of attorney who performed the work. Bowers v. Transamerica Title Ins. Co., 100 Wn.2d 581, 597, 675 P.2d 193 (1983). The court may then adjust this figure to reflect a number of other factors. Id. Due to the discretionary nature of this calculation, when a trial court awards attorney fees, "it must supply findings of fact and conclusions of law sufficient to permit a reviewing court to determine why the trial court awarded the amount in question." SentinelC3, Inc. v. Hunt, 181 Wn.2d 127, 144, 331 P.3d 40 (2014).

Here, the court did not enter separate findings of fact and conclusions of law regarding the award of attorney fees and costs, but included a finding in the order granting summary judgment on damages that "[t]he sum of $17,702.30 in attorney's fees and $578.00 in costs are reasonable sums." The court stated that it considered the December 31, 2018 affidavit of Robinson Properties' counsel with the motion for summary judgment. In the affidavit, the attorney described the hourly rates for the one attorney and one paralegal on the case that were used to calculate the requested amount of attorney fees and attached an exhibit showing billing statements for the case. The billing statements detail the work that was

performed, who performed each task, the applicable billing rate, and the time spent.

The affidavit of plaintiff's counsel appears to have properly supplied the court with the information necessary to calculate the lodestar and the Sampsons do not appear to have challenged this calculation below. The trial court did not abuse its discretion in finding the unchallenged fee calculation reasonable. Even though we are vacating the award for damages, we find no error as to the court's findings of fact and conclusions of law with respect to the award made for attorney fees. The Sampsons have not presented us with any challenges to the record before the court to demonstrate that its finding was improper. On remand, the court may reach a different result in light of the conclusions in this opinion.

VI.    Attorney Fees and Costs on Appeal

The Sampsons and Robinson Properties each contend that they are entitled to attorney fees and costs on appeal under RAP 18.1 and section 52 of the lease. "Reasonable attorney fees are recoverable on appeal if allowed by statute, rule, or contract" and properly requested under RAP 18.1. In re Guardianship of Wells, 150 Wn. App. 491, 503, 208 P.3d 1126 (2009). If the applicable law grants a party the right to recover reasonable attorney fees and costs on review, the party must devote a section of its opening brief to the request for fees and costs. RAP 18.1.

The prevailing party in an action to enforce a contract or lease that contains a provision for attorney fees and costs is entitled to reasonable attorney fees and costs, regardless of whether the prevailing party is the party specified in the lease. RCW 4.84.330. The "prevailing party" is the party in whose favor final judgment is

rendered. Id.  When neither party wholly prevails, the party that substantially prevails on its claims is considered the prevailing party. Peterson v. Koester, 122 Wn. App. 351, 364, 92 P.3d 780 (2004).  If neither party substantially prevails, the appellate court may decline to award attorney fees and costs on appeal. Id.

Section 52 of the lease provides for an award of reasonable attorney fees and costs incurred in enforcing or construing the lease.  Both parties devote a section of their initial briefs to the request for fees and costs.  Because the Sampsons prevailed on the issues of Angela's individual liability and the order of damages, they appear to be the substantially prevailing party on appeal.  We award attorney fees and costs on appeal to the Sampsons in an amount to be determined by a commissioner of this court in accordance with RAP 18.1.

We affirm in part, reverse the order granting summary judgment as to damages, and remand to amend orders and judgment by removing any indicia of individual liability as to Angela Sampson and for further proceedings consistent with this opinion.

WE CONCUR: