[No. 8907-2-I. Division One. April 5, 1982.]

BUCHSIEB/DANARD, INC., ET AL, *Appellants,* v.
SKAGIT COUNTY, *Respondent.*

*G. E. Mullen* and *Philip L. Carter,* for appellants.

*C. Thomas Moser, Prosecuting Attorney,* and *John R. Moffat, Deputy,* for respondent.

RINGOLD, J.—Buchsieb/Danard, Inc., a Washington corporation, appeals the order of the Skagit County Superior

Court dismissing its Petition for Writ of Review or in the alternative, Mandamus. By its order the court affirmed the action of the Skagit County Board of Commissioners (Board) in denying Buchsieb/Danard's application for preliminary plat approval. We find no error in either the Board's denial of the preliminary plat or the Superior Court's dismissal of the petition.

In 1978 Buchsieb/Danard purchased approximately 188 acres of unused land located just east of Bayview Airport on Bayview Ridge in Skagit County. The land was zoned residential and had been designated residential in the Northwest District Comprehensive Plan, adopted by the Board on January 7, 1974. On February 7, 1979, Buchsieb/Danard submitted a rezone application to the Skagit County Planning Department (Department) and on May 21, 1979, Buchsieb/Danard submitted a long plat subdivision application requesting approval of the preliminary plat for Bayview Estates. The rezone called for a portion of the land to be reclassified to: 27 acres heavy industrial; 46 acres commercial/light industrial; 18 acres multifamily residential. The remainder, approximately 98 acres, would be subdivided into 326 lots for single family and duplex residential use, to be developed over a 10–year period. Both proposals were found to have environmental significance and a draft Environmental Impact Statement (EIS) was prepared on February 9, 1979. A final EIS issued June 1, 1979. Neither EIS is part of the record on appeal.

At public hearings before the Skagit County Planning Commission (Commission) held June 18, 1979 and July 2, 1979, the Department staff recommended, with certain modifications, approval of the rezone request and the preliminary plat to the extent of phase 1 of the proposed residential development, consisting of 118 lots on 37 acres. The recommendations were made subject to numerous conditions relating to road construction, sewer service commitments, water supply, and drainage. The Department recommended that approval of subsequent phases of the subdivision as shown on the preliminary plat be deferred

until a later date. On July 16, 1979, the Commission voted to send the rezone request to the Board with no recommendation, and to recommend approval of phase 1 of the preliminary plat subject to the Department conditions.

The rezone application and the preliminary plat were considered by the Board at a public hearing on August 21, 1979. On August 28, 1979, the Board unanimously denied both the preliminary plat and the rezone. Resolutions Nos. 8140 and 8141 were adopted by the Board on September 25, 1979, setting out the reasons for the denial.

On September 7, 1979, Buchsieb/Danard filed a Petition for Writ of Review or in the alternative Mandamus in the Skagit County Superior Court, asserting that the Board's denial of the preliminary plat application was contrary to law and arbitrary and capricious. The writ issued on September 19, 1979, and the record was certified to the superior court. Arguments of counsel were heard on March 26, 1980 and the court issued its memorandum decision dismissing the petition on April 2, 1980. Findings of fact, conclusions of law, and an order of dismissal were filed on May 19, 1980. Buchsieb/Danard appeals.

### POWER OF COUNTY BOARD
### OF COMMISSIONERS

Buchsieb/Danard contends that under the Skagit County Code, the Board has no power to reject a preliminary plat once the Commission has recommended approval. We hold that the Skagit County Code (SCC) does not divest the Board of the final authority to approve or disapprove preliminary plats. While it is true that Skagit County Code 14.16.060[1] refers to "approval" of preliminary plats by the Commission, SCC 14.16.030 provides:

---

[1]SCC 14.16.060 provides in part: "The Planning Commission shall examine the preliminary plat, subdivision or dedication . . . and either approve, disapprove, or make written recommendations thereon . . . A copy of the Planning Commission action, or written recommendations, shall be forwarded to . . . the Board of County Commissioners."

*Administration.* Proposed plats, subdivisions and dedications of land outside of incorporated cities and towns shall be submitted for approval to the Skagit County Planning Commission, subject to the limitations hereinafter provided. Authority for the final approval or disapproval of plats, subdivisions, or dedications is vested in the Board of County Commissioners; . . .

Under this provision the Board has authority to reject the Commission's approval of a preliminary plat.

■■■ State law is to the same effect. The planning enabling act, RCW 36.70, authorizes the creation of a planning commission by the Board of Commissioners. RCW 36.70.030. The act provides that reports and recommendations of the planning commission relating to plats, subdivisions and other "official controls" are advisory only, the final decision as to such controls resting with the county board. RCW 36.70.020(11); RCW 36.70.650; *Lillions v. Gibbs,* 47 Wn.2d 629, 289 P.2d 203 (1955); *D.E.B.T., Ltd. v. Board of Clallam County Comm'rs,* 24 Wn. App. 136, 600 P.2d 628 (1979).[2] The state subdivision statute, RCW 58.17, is to the same effect. RCW 58.17.100[3] clearly estab-

---

[2]Because the county ordinance does not vest the Commission with final authority to approve a plat, we need not reach the issue of whether a county ordinance which did not reserve final authority in the Board would be in substantial compliance with state law. We note that the court in *D.E.B.T., Ltd. v. Board of Clallam County Comm'rs,* 24 Wn. App. 136, 600 P.2d 628 (1979), implied in dicta that a county ordinance could divest the Board of its final authority. The court, however, failed to consider the effect of RCW 36.70.650 and in any event found, as we do, that the county ordinance reserved final authority in the Board.

[3]At all times pertinent hereto, RCW 58.17.100 provided:

"If a city, town or county has established a planning commission or planning agency in accordance with state law or local charter, such commission or agency shall review all proposed subdivisions and make recommendations thereon to the city, town or county legislative body . . . Reports of the planning commission or agency shall be advisory only: *Provided,* That the legislative body of the city, town or county may, by ordinance, assign to such commission or agency, or any department official or group of officials, such administrative functions, powers and duties as may be appropriate, including the holding of hearings, and recommendations for approval or disapproval of preliminary plats of proposed subdivisions.

". . . Upon receipt of the recommendation on any preliminary plat the legislative body shall at its next public meeting set the date for the public meeting

lishes that the legislative body has the ultimate power to either adopt or reject the planning commission decision on a preliminary plat.

### DECISION TO HOLD A SINGLE HEARING

Buchsieb/Danard next complains that the decision of the Board to conduct a single hearing, at which both the rezone and the preliminary plat proposals were presented, was arbitrary and capricious and an abuse of discretion. The record, however, shows no objection to the scheduling of both hearings on the same date. As to the order in which testimony was taken at the hearing, we note that it was Louis Buchsieb of Buchsieb/Danard who suggested to the Board that the two proposals be heard together. He stated: "That completes my presentation on the rezone, gentlemen. Do you want me to go ahead with the other portion now, speaking to the preliminary plat, or do you want me to come back to that." Counsel for the opposition then urged the Board to permit Buchsieb to finish his total presentation so that all of the opposition could be presented at one time. The Board agreed, in the interest of avoiding repetition and confusion. The only objection made to this decision was the statement of counsel for Buchsieb/Danard that his client would "feel more comfortable" if the rezone were considered before the preliminary plat. The Board ruled that the two proposals would be considered separately when the time came for a decision.

 Many of the issues discussed at the hearings applied to both the rezone and the subdivision. The adequacy of the local roads, water supply, sewer service, and drainage

---

where it may adopt or reject the recommendations of such hearing body. If, after considering the matter at a public meeting, the legislative body deems a change in the planning commission's or planning agency's recommendation approving or disapproving any preliminary plat is necessary, the change of the recommendation shall not be made until the legislative body shall conduct a public hearing and thereupon adopt its own recommendations and approve or disapprove the preliminary plat."

RCW 58.17, including 58.17.100 was amended by the legislature in 1981. Laws of 1981, ch. 293, p. 1244.

were concerns common to both the staff findings and the public comments and applied equally to the rezone and the subdivision. The Port of Skagit's tentative approval of the residential subdivision depended on the existence of an industrial buffer area between the airport and the residential areas. Under these circumstances, the Board's decision as to the order in which testimony would be presented was neither an abuse of discretion nor arbitrary and capricious.

### JUSTIFICATION FOR DENIAL OF THE PRELIMINARY PLAT

Buchsieb/Danard next challenges the reasons given by the Board for the denial of the preliminary plat, arguing that they involve considerations outside the scope of the local subdivision ordinance. The grounds given by the Board for its decision were as follows:

1. Adverse impact on local traffic patterns;

2. Incompatibility with current land use in nearby areas;

3. No specific commitment for handling drainage;

4. Proximity to Bayview Airport, creating potential environmental problems;

5. Removal of secondary agricultural land;

6. Failure to establish need for additional new housing on the scale proposed;

7. No specific certain commitment for sewer lines beyond a 2–year period;

8. Incompatibility with planned growth management in an agricultural area;

9. Inadequacy of county revenues to provide urban services for a community of the proposed size.

■ Consideration of these factors by the Board in an application for preliminary plat approval is authorized by local and state law. SCC 14.16.010 provides:

*Statement of Purpose.* The purpose of this subdivision ordinance is to encourage the orderly development of land within the County, provide the public with the assurance that certain necessary public facilities will be

provided in the new subdivision; provide the public with the assurance that lot sizes, land uses, streets and that [sic] street connections will be in conformance with the County standards; provide the public with the assurance that future plats, subdivisions and dedications will be improved in accordance with an established public policy and to provide a more precise and simpler procedure for the conveyance of titles of small tracts of land.

The County authority shall insure that appropriate provision is made in the plat or subdivision for streets and public ways, and shall consider all other facts deemed relevant and designed to indicate whether or not the public interest will be served by the platting, subdividing or dedication. If it is found that the plat, subdivision, or dedication makes appropriate provisions for streets and other public ways, and that the public use and interest will be served by the platting, subdividing, or dedication, then written approval shall be suitably inscribed on the plat, subdivision or dedication.

The Board is likewise empowered by the state environmental policy act, RCW 43.21C, to inquire into and disapprove preliminary plats on the basis of environmental impact. *Department of Natural Resources v. Thurston County,* 92 Wn.2d 656, 601 P.2d 494 (1979); *Loveless v. Yantis,* 82 Wn.2d 754, 513 P.2d 1023 (1973).

In addition, concern over noise and traffic, police and fire protection, schools, and other problems of planned growth management are properly considered by a board confronted with plans for a development which, in the words of an opponent at the hearing, would turn a previously unused area into the fourth largest town in Skagit County. We note that the Comprehensive Plan which characterized this area as residential provides specifically that the area designated for high density residential development should only be fully developed when all urban services are available. There is no evidence here that the plat was denied for improper reasons or motives. We hold that the Board's decision was reached through a proper exercise of its authority.

EVIDENCE TO SUPPORT REASONS

Buchsieb/Danard's remaining contention is that two of the reasons for denial given by the Board were without foundation in fact. See 3 and 7 above. As to the lack of commitment by the drainage district, the district commissioner testified "We have not signed anything final on the agreement at all, we just felt we had to take care of the water that goes there anyway. We would prefer not to have anything to do with the holding whatsoever." The City Supervisor of the City of Burlington stated that the City would provide sewer service, but could not provide a guaranty of future service. The sewer and drainage commitments were both conditioned on as yet unnegotiated contract terms. The Board did not err in counting this lack of specific commitments among its reasons for denying the plat. The Board's findings were supported by the record.

The Superior Court did not err in dismissing the petition of Buchsieb/Danard and affirming the Board action. The order dismissing the petition is affirmed.

WILLIAMS and CORBETT, JJ., concur.

Reconsideration denied May 12, 1982.

Review granted by Supreme Court October 8, 1982.