[No. 10737-2-I. Division One. April 9, 1984.]

KENART & ASSOCIATES, *Appellant,* v. SKAGIT COUNTY, ET AL, *Respondents.*

*Kenneth J. Evans,* for appellant.

*C. Thomas Moser, Prosecuting Attorney,* and *John R. Moffat, Chief Civil Deputy,* for respondents.

JOHNSEN, J.*—Kenart & Associates (Kenart) owns land in Skagit County which it wished to develop. The Board of County Commissioners denied Kenart's application for a Planned Unit Development (PUD) and Kenart sought review by way of writ of review. The Superior Court affirmed the decision of the Board and Kenart has appealed.

The findings of fact, which are not challenged, are as follows:

1. Plaintiff Kenart and Associates filed an application with defendant Skagit County for a preliminary plat of Kenart Estates, an 80 lot, 79.5 acre Planned Unit Development located approximately three miles north of Sedro

---

*Judge Oluf Johnsen is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

Woolley, Skagit County, Washington.

2. This matter was referred to the Skagit County Planning Commission which held a public hearing on June 23, 1980, at which the applicant, the County and other interested citizens had an opportunity to present their views on a proposal; at the conclusion of the public hearing, the Planning Commission voted to continue the matter until July 14, 1980.

3. On July 14, the Planning Commission voted to deny the application for preliminary plat approval of Kenart Estates P.U.D.

4. The recommendation of the Planning Commission was then referred to the Skagit County Board of Commissioners.

5. The Board considered the matter at public meetings on July 29 and August 6, 1980.

6. On August 6, 1980, the Board of County Commissioners voted to remand the matter to the Skagit County Planning Commission for the preparation of findings of fact to support the recommendation previously made by the Planning Commission.

7. On August 11, 1980, the Skagit County Planning Commission adopted findings denying the Kenart Estates P.U.D. The Planning Commission recommended denial of the proposal for the following reasons:

1. The soils on the subject property have been identified prime agricultural soils. Approval of the P.U.D. would contribute incrementally to the loss of agricultural lands and potential agricultural lands;

2. The P.U.D. would increase traffic levels on SR 9 by significant amounts. This concern is substantiated in the D.E.I.S.;

3. Potential drainage problems associated with known periodical flooding of creeks which flow through the subject property;

4. Potential adverse impact on existing domestic water sources;

5. Lack of adequate services such as fire protection, police protection, potential capacity problems of schools, particularly Samish Elementary;

6. Potential disruption of existing rural life styles;

7. No evidence to substantiate the need for the creation of additional lots;

8. The public interest will not be served by approval of

this P.U.D.

8. On August 26, 1980, the Board of County Commissioners unanimously voted to accept the recommendation of the Planning Commission to deny the Kenart Estates P.U.D. . . .

The court concluded that the record contained sufficient evidence to support and validate the findings made below and that the decision of the Board of County Commissioners was not arbitrary, capricious or unreasoning. The court further concluded that the Board's referral back to the Planning Commission for the entry of findings was not error, that denial of the plat was not an unconstitutional taking of property, and that there was no requirement for a county legislative body to advise the applicant either orally or in writing of what steps he should take in order to have the application approved at a later date. The court then entered an order affirming the Board's decision.

Error has been assigned to the court's decision upholding the Board and to the court's refusal to direct the Board to determine what changes in the plat were required in order to obtain approval or specify what conditions precluded any possibility of approval.

Prior to its acquisition by Kenart, this 79.5–acre property had been zoned as residential, that is, one residence was allowed for each 12,500 square feet. Later the acreage was rezoned as residential reserve, which required a full acre for each residence. Kenart's proposal is for a PUD of 80 lots on 79.5 acres with 39 acres of clustered residential development, 30 acres of open space and 10 acres for a gravel pit.

A request for approval of a planned unit development is treated as a request for a rezone. *Lutz v. Longview*, 83 Wn.2d 566, 520 P.2d 1374 (1974); *Johnson v. Mount Vernon*, 37 Wn. App. 214, 679 P.2d 405 (1984). An appellate court will overturn a governmental body's decision on a rezone only if the decision is arbitrary or capricious. *Lechelt v. Seattle*, 32 Wn. App. 831, 650 P.2d 240 (1982); RCW 58.17.180.

Arbitrary and capricious action has been defined as

willful and unreasoning action, without consideration and in disregard of facts and circumstances. Where there is room for two opinions, action is not arbitrary and capricious even though one may believe an erroneous conclusion has been reached.

(Citations omitted.) *State v. Rowe*, 93 Wn.2d 277, 284, 609 P.2d 1348 (1980). The party alleging that an action is arbitrary and capricious bears the burden of so showing. *Pierce Cy. Sheriff v. Civil Serv. Comm'n*, 98 Wn.2d 690, 658 P.2d 648 (1983).

Kenart argues that the Board's findings are not supported by the record and further argues that the Board must tell Kenart how to correct the application so it will be approved or if there are factors which would prohibit approval under any circumstances. Kenart also argues that the process as conducted here violated the "appearance of fairness" doctrine and amounts to an unconstitutional taking of property without compensation.

The criteria for approving or disapproving the preliminary plat of a proposed subdivision are stated in RCW 58.17.110, which reads in relevant part as follows:

The city, town, or county legislative body shall inquire into the public use and interest proposed to be served by the establishment of the subdivision and dedication. It shall determine if appropriate provisions are made for, but not limited to, the public health, safety, and general welfare, for open spaces, drainage ways, streets, alleys, other public ways, water supplies, sanitary wastes, parks, playgrounds, sites for schools and schoolgrounds, and shall consider all other relevant facts and determine whether the public interest will be served by the subdivision and dedication. If it finds that the proposed plat makes appropriate provisions for the public health, safety, and general welfare and for such open spaces, drainage ways, streets, alleys, other public ways, water supplies, sanitary wastes, parks, playgrounds, sites for schools and schoolgrounds and that the public use and interest will be served by the platting of such subdivision, then it shall be approved. If it finds that the proposed plat does not make such appropriate provisions or that the public use and interest will not be served, then

the legislative body may disapprove the proposed plat.

In *Loveless v. Yantis,* 82 Wn.2d 754, 513 P.2d 1023 (1973), the Supreme Court reversed a superior court judgment granting preliminary approval to a plat because the county commissioners' refusal to grant approval was arbitrary and capricious. In the course of its opinion, that court made the following observations:

It is true that a purpose of a preliminary plat is to secure approval of the street layout and location "design" of a proposal. Essentially, the plat provides information not specified in ordinance regulations. 3 A. Rathkopf, *The Law of Planning and Zoning,* ch. 71, § 5 (1972). The importance of this preliminary approval procedure is indicated by Rathkopf at page 71–34:

Where this two–step procedure is in effect, consideration of the preliminary plat must result either in its approval as submitted, or a statement that it will be approved if it is modified in the manner specified by the planning board, or in *its disapproval where conditions or infirmities appear or exist that would preclude any possibility of approval.*

The planning board cannot modify the preliminary plat and then disapprove a final plat conforming to the plat modified as prescribed by the board.

*Loveless v. Yantis, supra* at 761.

Both parties also cite the case of *Department of Natural Resources v. Thurston Cy.,* 92 Wn.2d 656, 601 P.2d 494 (1979). There the county commissioners denied a preliminary plat application in order to preserve an eagle habitat. In sustaining that decision, the court made this observation at page 669.

Of crucial importance in this case is the fact that the Commissioners' decision to deny the plat leaves open the possibility of approving a less dense development of Wood Point. The Commissioners have consistently maintained they would entertain an application for a plat which provided an adequate buffer zone for protection of the eagles' preferred perching and feeding areas. It should be noted that the Commissioners did not find any adverse impact from development of 11 of the proposed lots. Moreover, the findings provide specific guidelines

for planning a buffer zone the Commissioners would find acceptable. Finally the decision left open the possibility of an alternate cluster configuration for the development—a configuration specifically favored by the County's Comprehensive Plan.

The distinguishing characteristics of this case are that specific guidelines were contained in the commissioners' findings so that their decision suggested an alternate which might be acceptable, and their objections might be met.

*Buchsieb/Danard, Inc. v. Skagit Cy.*, 31 Wn. App. 489, 643 P.2d 460 (1982) lends some support to the trial court's decision but is distinguishable on its facts. In *Buchsieb/ Danard* the County received applications for both a rezone and a preliminary plat approval. The plat provided for the subdivision of approximately 98 acres into 326 lots for single family and duplex residential use and the reclassification of other residential zoned property for industrial and multi–family use. The planning commission recommended approval of the preliminary plat to the extent of one phase of the proposed residential development, consisting of 118 lots on 37 acres. The county commissioners denied approval of both the rezone and the preliminary plat. Upon review this court affirmed the decision, noting, among other concerns, that the board was confronted with plans for a high density development which would turn a previously unused area into the fourth largest town in Skagit County.

The most recent opinion on the subject of plats is *Johnson v. Mount Vernon, supra*. There the developer had applied for approval of a preliminary development plan for a 69–acre mobile home subdivision. The planning commission approved the plat; the city council disapproved. Upon review the Superior Court examined the reasons for disapproval of the application, and although the court had the benefit of the discussion of the issue by council members, there were no specific findings and conclusions which would permit this court to evaluate the council's decision. This court held that there must be both findings and an adequate record to review adjudicatory proceedings. *Johnson*

*v. Mount Vernon, supra.* The reasons for this requirement are to provide a basis for review and guidance to the developer.

We turn now to the findings of the planning commission which were incorporated in the Board's decision to deny the PUD application. The finding that a PUD would contribute to the loss of agricultural lands is supported but conflicts directly with the Comprehensive Plan which dictates residential rather than agricultural use of the area in question. The finding that increased traffic levels would result on SR 9 is supported but whether Kenart's proposed solution to this problem is adequate is not addressed. The finding that potential drainage problems exist is not sufficiently precise to explain a denial in the face of a contrary opinion by the Public Works Department. The Health Department conditionally approved the water supply and, contrary to the finding of the Commission, fire and police protection were determined to be adequate by the appropriate reviewing agencies within the county. School capacity is always a legitimate concern but, taken alone, any development could be halted solely on this ground. If no solution exists, then perhaps no further development is appropriate. But the mere fact that more houses mean more children and more children mean greater school capacity is needed, is not the end of the inquiry. Any finding that existing rural lifestyles might be disrupted by the proposed use is insufficient to support denial of the plat in view of a comprehensive plan which authorizes the population density requested by the developer.

Finally, the Commission found that there was no need for platting additional lots and that the public interest would not be served by approving the proposed plat. These recitals, unless supported by other findings, are not "facts". RCW 58.17.110 requires the legislative body to inquire into the public use and interest proposed to be served and properly so. But once appropriate provision is made for the enumerated factors and the Board wishes to consider "other relevant facts", such as loss of agricultural lands,

potential disruption of rural lifestyles, and the need for additional lots, the Board must specify why the proposed use of land already zoned for residential use will reduce the quantity of land available for agriculture, how the proposed use will disrupt existing rural lifestyles, why there is not a need for a subdivision creating additional lots in the community and why these factors are relevant.

Our concern in this case is that the planning commission may have denied approval of the PUD as a result of community displeasure rather than for the reasons stated. In every instance the developer either satisfied, or offered a change to satisfy, the concerns raised; yet its application was denied based on findings which are virtually unreviewable. Loss of agricultural land which has been zoned residential does not impress us as a logical reason for denial. We also have difficulty understanding, without more explanation, why disruption of existing rural lifestyles and a surplus of lots in the community are valid reasons for denial. The findings in this case neither provide guidance to the developer nor permit meaningful appellate review.

We therefore reverse the trial court's order and remand to the Board of County Commissioners for further hearing and clarification of its findings.

We do not adopt Kenart's proposal that there be a requirement that the Board specifically advise an applicant what must be done to obtain approval of a plat. Because of our disposition, we do not address the "appearance of fairness" issue or any claim that denial of this application was a taking of property without compensation.

Reversed and remanded.

SWANSON and SCHOLFIELD, JJ., concur.

Review denied by Supreme Court June 8, 1984.