No. 98-244

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 19N

WILLIAM VERGIN and CAROL VERGIN,

Plaintiffs and Appellants,

v.

FLATHEAD COUNTY,

Defendant and Respondent.

APPEAL FROM: District Court of the Eleventh Judicial District,

In and for the County of Flathead,

The Honorable Ted O. Lympus, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Randall A. Snyder; Snyder Law Office, Bigfork, Montana

For Respondent:

Todd A. Hammer; Warden, Christiansen, Johnson & Berg,

Kalispell, Montana

Submitted on Briefs: October 29, 1998

Decided: February 11, 1999

Filed:

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

**¶1. Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.**

**¶2. William and Carol Vergin (the Vergins) appeal from the judgment entered on the order of the Eleventh Judicial District Court, Flathead County, granting Flathead County's motion for summary judgment. We affirm.**

**¶3. The sole issue on appeal is whether the District Court erred in granting summary judgment to Flathead County.**

## BACKGROUND

**¶4. The Vergins own approximately 12½ acres of real property in the Smith Valley area of Flathead County. They submitted a preliminary plat and application for a minor subdivision to the Flathead County Board of Commissioners (Commissioners) for approval in February of 1997. The Flathead Regional Development Office (Development Office) prepared a report recommending denial and, on March 3, 1997, the Commissioners held a hearing. The Commissioners denied the preliminary plat application based on the findings of fact in the Development Office report. As summarized in the Commissioners' denial letter, those findings included density which was too high and substantially deviated from the Flathead County Master Plan (Master Plan), and a number of site constraints.**

**¶5. The Vergins filed an appeal and a complaint for damages, alleging that the reasons for the Commissioners' decision to deny were arbitrary and capricious. Flathead County answered and, after entry of a scheduling order, moved for summary judgment and filed a supporting brief and affidavits.**

**¶6. Thereafter, the Vergins served their first discovery request on Flathead County**

and, pursuant to the scheduling order, both parties filed exhibit and witness lists. The Vergins also moved to stay the summary judgment proceedings, pending discovery, and to compel answers to its discovery request. Other motions were filed and briefed and the Vergins filed a brief in opposition to Flathead County's motion for summary judgment, together with supporting materials which included a transcript of the tape recording of the Commissioners' hearing on their application.

¶7. The District Court held a hearing on the motion for summary judgment and the Vergins' motions to stay and to compel, received oral argument from counsel and heard testimony from Commissioner Howard Gipe and from Steve Kountz, the senior planner at the Development Office. The District Court took the motions under advisement and, thereafter, entered its order granting Flathead County's motion for summary judgment and denying the Vergins' motions to stay and to compel. Judgment was entered and the Vergins appeal from the portion of the District Court's order granting Flathead County's motion for summary judgment.

## DISCUSSION

¶8. Did the District Court err in granting Flathead County's motion for summary judgment?

¶9. Local governing bodies such as the Commissioners in the present case must either approve, conditionally approve or disapprove an application for a subdivision pursuant to § 76-3-608, MCA. Section 76-3-608(3), MCA, requires that a subdivision proposal be reviewed under a substantial list of enumerated criteria, including "the effect on agriculture, agricultural water user facilities, local services, the natural environment, wildlife and wildlife habitat, and public health and safety[.]"

¶10. A person who is aggrieved by an arbitrary or capricious decision of a governing body regarding an application for a subdivision is authorized to bring an action for damages and/or appeal the decision at issue. Section 76-3-625, MCA. Thus, both the District Court and this Court are obligated to review the Commissioners' decision under the "arbitrary or capricious" standard. In Montana, that standard does not permit a reversal of the decision at issue merely because evidence is inconsistent or might support a different result; the challenged action "must appear to be random, unreasonable or seemingly unmotivated, based on the existing record." *See* Silva v. City of Columbia Falls (1993), 258 Mont. 329, 335, 852 P.2d 671, 675.

¶11. Here, the Commissioners' denial letter stated that it was based on the findings of fact contained in the Development Office report and then merely presented a brief summary of the findings. The report itself included express findings relating to effects on health and safety, effects on wildlife and wildlife habitat, effects on the natural environment, effects on local services, effects on agriculture, compliance with the Master Plan and compliance with Flathead County subdivision regulations. Among other things, those findings were that development "is anticipated to result in incremental effects on area wildlife due to pets, increased human activity, automobile traffic, noise, and outdoor lighting[;]" that air quality would be affected because of increases in road dust resulting from the expected 50 additional daily trips over the gravel roads that access the subdivision site; that the proposed subdivision site is adjacent to over 200 acres of contiguous agricultural land which would be negatively impacted by additional development via inflation of land values and conflicts between residential and agricultural uses; and that the area is designated as agriculture/silviculture in the Master Plan and the proposed subdivision density of one lot per 2½ acres is too high to be consistent with the designation, as well as inconsistent with the historical practice of limiting development in such areas to no more than 1 lot per 5 acres.

¶12. In challenging the Commissioners' denial, the Vergins' primary focus both in the District Court and in this Court on appeal is on the so-called "5 acre rule" and the Commissioners' reliance on that "rule" in denying their application for a subdivision. Indeed, they contend that the 5 acre rule is unconstitutional both on its face and as applied. We need not address the Vergins' contentions regarding the 5 acre rule, however, because--as set forth above--that "rule" played only a minor part in the Commissioners' decision and the remainder of that decision clearly was based on other applicable criteria set forth in § 76-3-608(3), MCA.

¶13. As to those criteria, the Vergins argue first that the summary contained in the Commissioners' denial letter was insufficient in that the "site constraints" are not stated as facts or dangers and no explanation is offered as to how those constraints support denial of their application for a subdivision. While this is correct, we observed above that the denial letter merely summarized the express findings contained in the Development Office report and stated that the denial was based on those findings.

¶14. The Vergins concede that, as to some of the site constraints, the Development

Office report findings are more detailed. They argue, however, that those findings do not take into account the requirements of the Master Plan and controlling subdivision regulations. We agree that § 76-3-608(3)(b), MCA, requires review of a proposed subdivision for compliance with local subdivision regulations; however, the findings at issue--as set forth above--relate to consideration of the subsection (3)(a) criteria, namely, the effect on agriculture, the natural environment, wildlife and wildlife habitat and the like.

¶15. Nor will we consider the Vergins' additional argument that the findings in the Development Office report are incorrect. The transcript of the hearing on the Vergins' application reflects that the Vergins did not disagree with those findings of fact. Thus, they have waived their right to challenge the correctness of the findings.

¶16. Finally, the Vergins argue that the reasons given for denial of their subdivision application are insufficient, arbitrary and capricious, and they advance several cases from the state of Washington in urging this Court to so conclude. The Washington cases are of no assistance to the Vergins, however.

¶17. The Vergins rely on Kenart & Associates v. Skagit County (Wash. App. 1984), 680 P.2d 439, 444, for the proposition that a commission's decisions must be supported by facts and that "recitals, unless supported by other findings, are not 'facts.' " The quoted language referred to the fact that, in that case, the commission merely recited general statutory language as findings, such as "that there was no need for platting additional lots and that the public interest would not be served by approving the proposed plat." *See Kenart*, 680 P.2d at 444. Here, as discussed above, the Development Office report contained express findings on the statutory criteria rather than mere general statements couched in conclusory statutory language.

¶18. The Vergins also rely on Nagatani Bros. v. Skagit Cty. Com'rs (Wash. 1987), 739 P.2d 696. There, the county commissioners adopted, without a hearing, four reasons provided by its planning commission for denying an application for approval of a preliminary plat. One of the stated reasons for denial--that the plat removed prime agricultural land from production--was invalid on its face because it conflicted with the applicable residential zoning designation. *Nagatani*, 739 P.2d at 697. Another reason for the denial--adverse traffic impact--was unsupported by the record, while a third reason--that the plat did not comply with a district comprehensive plan--was incorrect because, under Washington case law, any inconsistency between the

comprehensive plan and the zoning ordinance was to be resolved by application of the zoning ordinance. The final, and only remaining, reason for denial--future adverse environmental impacts resulting from the proposed plat being located immediately adjacent to existing agricultural production--likewise was invalid because the only record support for it was a partial quote from a health department letter, and the rest of the letter stated that environmental health concerns had been addressed to the health department's satisfaction. *Nagatani*, 739 P.2d at 698. Moreover, the Washington Supreme Court observed that, because that state's environmental laws permitted denial only on the basis of specific, proven, significant adverse impacts identified in a final EIS and that basis did not exist, the commission could not deny the plat on the basis of environmental concerns. As a result, the court determined that the commission's denial was arbitrary and capricious. *Nagatani*, 739 P.2d at 698-99.

¶19. Both the facts and the law in *Nagatani* are distinguishable from those before us in the present case. Here, the Commissioners held a hearing on the Vergins' application and, as noted above, Carol Vergin stated on the record that she did not disagree with the findings. As also discussed above, the findings were made pursuant to the statutory mandate that such matters as agriculture, the natural environment, and wildlife and wildlife habitat be considered by a governing body in deciding whether or not to approve a subdivision. *See* § 76-3-608, MCA.

¶20. Flathead County had statutory grounds for denying the Vergins' application in the present case. As a result, its decision was neither random nor unreasonable based on the existing record *(see Silva*, 258 Mont. at 335, 852 P.2d at 675) and, as a result, was not arbitrary or capricious. We hold, therefore, that the District Court did not err in granting summary judgment to Flathead County.

¶21. Affirmed.


/S/ KARLA M. GRAY


We concur:

No

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART